The next case is Combs v. Duncan. It's Mr. Snyder and it's Mr. Riles. Mr. Snyder, are you ready to proceed? Please do so. Please support, counsel. This is a straightforward negligence case involving two vehicles in Alexander County that had a collision. The issue basically before the court is should this matter be submitted to the jury or was the court correct in entering a direct charge? The facts of this case were relied on by Plankton's testimony and basically are straightforward. Ms. Combs was approaching a left-hand turn to turn onto the bridge that's actually called the Kentucky Bridge in Alexander County. It was raining. She slowed down. She remembers there being a green light and specifically says a green arrow, which is a critical fact in this case. Can you stop there? I didn't pick that up until I read her cross. That's correct. There was a green arrow and that's undisputed or that was her testimony at cross because I never saw it mentioned in opening and I never saw it mentioned in her direct. In the direct we just basically say green light. I believe it was the testimony and our initial brief to the court was a green light. Once I came back and reviewed the record once again across, she was asked, I think there was some dispute of what type of arrow or what type of green light it was and she said, I believe it was a green light, a green arrow and there was no other testimony to contradict that. Well, I guess in my mind I was trying to sort out whether or not that was a question regarding what type of light there was there rather than whether or not there was a green arrow at the time she was trained left. So I was kind of left confused about that as well. I think the confusion came from, and it's not in the record, but at some point in time there was a change of the type of light at what I'll call an intersection. And I believe it was clarified across that it was actually a green arrow, specifically a green arrow versus a green light or some other reference that was there. And so the medical stipulated the amount of medical? It was. And so all that was left, your case concluded? Yes. And then I take it from what I could discern, there was a evidence depot of the defendant? That's correct. Was that, and I'll ask your opposing counsel there, if that was then pretty much the rest of the case? It was. Okay. That's all I have right now. Thank you. Ms. Combs testified that she was going approximately 15 miles per hour when she proceeded to make her turn and the impact ultimately spun her car around. The inferences that we believe the jury could have drawn on this case is that Blanketh had a right to turn. She had not only a green light, but she testified she had a green arrow. She turned at a reasonable speed. Did Judge Clark think there was the arrow at the trial? I don't know that Judge Clark ever addressed that. I'm sorry, can you? He did not address that in his statements to us. That was a fact that was provided during a cross-examination. I don't know whether Judge Clark considered that or not. It would be wrong for him to speak as to what Judge Clark was addressing, because he didn't make any mention of that in open court and didn't make any mention of that in his ruling. She proceeded to look to oncoming traffic. She said she did not see anyone. The other inferences that can be drawn is that the defendant did not maintain a proper lookout. He could have honked. He could have had proper lighting. She said she did not see any headlights. She didn't see this vehicle at all when she made her turn. And we also believe that the jury could have indicated and inferred that he drove at speed greater than reasonable given the circumstances. It was raining and it was difficult to see that day. The defendant wants this court to believe that the only inference that can be drawn is that the plaintiff just merely turned in front of the defendant. This plaintiff had a passenger in her vehicle, yet gave every indication that she was proceeding with caution. And I think the most critical fact is the fact that she indicates during her testimony is that she had a green arrow. That would give her, if the jury believed that fact, that would give her the right of way to proceed with her turn. Now, obviously, we don't have the benefit of seeing what the defendant testifies to, and it may very well be that the court let the matter go forward. The jury could have then determined whether they believed Ms. Jones or not, and we're not We believe, based on these facts, this court should reverse the trial court's granting of the directed verdict and allow a new trial for this matter. Mr. Riles, were you the trial attorney? Were you the trial attorney? I was. Okay, thank you. Unless there are any questions, that's all I have for you. Thank you. Thank you, Your Honor. Mr. Riles, proceed when you're ready. May it please the court, counsel. First of all, I would just like to point out regarding the green arrow that was discussed. Ms. Holmes never testified that she had a green arrow. Every time she talked about entering the intersection, she had a green light. And just to clarify, she was going southbound on Highway 51. The defendant was going northbound on Highway 51, and she made a left turn. She testified at pages 55 and 64 that she had a green light. When I asked her, well, describe the intersection. Was there a sign up there that said, left turn wheel on green? She said, well, I don't know about that, but there was a green arrow. She never said the green light arrow was on. She just said that intersection had a green arrow. And I think that's the distinction that Judge Clark caught on the trial. He observed that she was describing the intersection that had a green arrow. She never testified she had a green arrow. She always said she had a green light. And as we all know, a lot of the intersections with the green arrow also have a green light. And so the issue that's before this court is whether the jury could draw an inference or whether it was required to speculate or conjecture about the results. There was no testimony regarding the speed of the vehicle. The testimony of the defendant's vehicle? The defendant's vehicle, I'm sorry. Ms. Combs said she never saw the vehicle at any time. The plaintiff would have you believe that that's an inference, that the vehicle was going too fast. The other inference would be that she just did not see the vehicle for whatever reason. But those inferences could go either way, and isn't that to be weighed against the movement in a directed verdict? Salinas v. Wharton indicated an inference is a probability as opposed to a possibility. If it's a possibility, then the plaintiff does not carry the burden of weight, and therefore the directed verdict would be appropriate. And I think it was in this case. There was no testimony that he was going too fast. There was no testimony what opportunity the defendant had to avoid the accident, whether he would have had another 22 feet if he would have been going at some slower speed or whatever. I think the case law is very clear that without that testimony, the plaintiff is still carrying the burden of proof, the burden of persuasion, and therefore speculation and not inferences. Was all that you had to put on was basically the evidence depot of your client? I would have put his deposition on, but the judge granted the directed verdict as opposed to plaintiff's evidence. But that was it. That was your case, essentially. And everything else, I guess the bills were stipulated that they were, in fact, whatever they said they were. Correct. That is correct. Now, just a little aside, because the record was very brief, so I read that. And this was during the flooding, correct? The trial was during the flooding. Right. There's statements on the record by the judge that we're going to try to get out of here. There was voluntary evacuation discussed and that type of thing, right? The city council, my understanding, was going to meet that day to discuss whether it was going to be a mandatory evacuation or not. But it was voluntary at the time. That day it wasn't. That day it wasn't mandatory? Right. I think the judge was talking about it being voluntary, though. Right, right. It was voluntary and the judge offered all the potential jurors, if they needed to go take care of a property, whatever, they could and several did take that opportunity to leave. In Vaadhaar, that was? Correct. Okay. So they were under duress, so to speak. I don't know that they were under duress. The ones that were left, I don't know if they lived in town or how far away they lived, so I can't say as to what duress the ones that were actually chosen for the trial would have been under. But, again, the fact of the matter is there was no evidence of the negligence of Mr. Dunbar. It was, you know, saying, well, Ms. Combs didn't see the vehicle, so therefore he had to be going too fast. Well, that's not an inference. That's speculation. And I don't think the judge was proper and he could not make that kind of an inference. Likewise, he's saying that the inference that she didn't see headlights means he did not have his headlights on. Well, if he never saw the car, then you can't say, well, the reason he didn't see the car was because the headlights were not on. The headlights could have been on, but she still did not see the car. That's speculation. That's not an inference. Again, he's trying to say that the car was pushed another direction and therefore there's an inference he was going too fast. Well, Ms. Combs testified it was raining hard and she was starting to make a left turn, so there's no indication of how much speed it would require for that. So I don't think there's any basis for that for going too fast. Well, so basically every element that he had of negligence in his complaint, there was no evidence of that regarding the trial. So there was no burden of proof and the jurors just left to speculate. I think the judge was proper in granting the directive verdict at that point. Now, in his oral arguments, he indicated that, well, I could have put on evidence that would have led to some negligence on my client. Well, he has to put that on his case in chief. If he doesn't do that, then he hasn't prevailed and I don't have to put on my case in chief. So I think the judge was proper and at that point there was no evidence of negligence on Mr. Duncan and therefore the directive verdict was appropriate. That's all I have, unless you have any questions. No, thank you. Thank you, Your Honor. Any rebuttal? There was a question asked and I believe it was pointed out in our reply brief. I'm looking at page 64 and it goes into 65 of the trial record. Ms. Duncan was asked about was there a sign up there that also says left turn yield on coming vehicle and her answer was I'm not sure about that. I know it had a green light, a left arrow with a green light. There wasn't any question of Ms. Combs about describe the type of light. Her specific testimony on direct was did she have a green light? She said yes. And on this question she just verifies that she has a green arrow with a light. Well, I guess I'm pretty astounded that that was never brought out in opening or direct examination if that were the case. Because obviously there's an entirely different duty if you've got an arrow versus a yield. I would agree with that, Your Honor, and I would have to take responsibility for that since I was the one asking the questions. That's something that I should have clarified on direct when I asked Ms. Combs specifically in more detail about the light. And I think all we can rely on from the trial court's record is her agreement to allow her to proceed. Thank you, Your Honor. Thank you. Thanks to both of you for your arguments and briefs. We'll provide you with a decision as early as possible. Break time.